No. 50,127

Parsons—National Education Association, *Appellee-Cross-Appellant,* v. Unified School District No. 503, Parsons, Kansas, *Appellant-Cross-Appellee.*

(593 P.2d 414)

Opinion filed March 31, 1979.

*Fred W. Rausch, Jr.,* of Topeka, argued the cause and was on the brief for the appellant-cross-appellee.

*Patricia R. Griffin,* of Crane, Martin, Claussen, Hamilton & Barry, of Topeka, argued the cause, and *Wesley A. Weathers,* of the same firm, was with her on the brief for the appellee-cross-appellant.

The opinion of the court was delivered by

FROMME, J.: This appeal arises as a result of collective negotiations between the teachers and school board of Unified School District No. 503, Parsons, Kansas. The action was filed in the district court for injunctive and other relief as authorized by K.S.A. 1977 Supp. 72-5430. The purpose of the action was to have the court determine which proposals made for the bargaining table fell in the category of "terms and conditions of professional service" so as to be mandatorily negotiable. See K.S.A. 1978 Supp. 72-5413(*l*). In addition the district court was asked to determine whether either or both of the parties had committed practices prohibited by the above statute, and the court determined they had not. The proposals were being negotiated for the 1978-79 school year. The school board appeals and the teachers cross-appeal.

### APPEAL BY BOARD

We will first consider the points raised by the board. The first concerns the number of contract days. The teachers' proposal was as follows:

"We wish to amend item 5063.01 Contract Days by substituting, The basic contract days of teachers, exclusive of supplemental or extended time contracts, shall be no more than 186 days, consisting of 177 teaching days, six (6) in-service professional days, and three (3) work days (one at the end of the first, second, and third grading periods) for the purpose of working on grades. Two (2) of the six (6) in-service days will be pre-school in the classroom preparation days with no scheduled meetings."

The district court noted that K.S.A. 1978 Supp. 72-1106(*a*) requires a school year to consist of not less than 180 school days during which pupils regularly enrolled must be under direct supervision of the teachers while the pupils are engaged in educational activities. It further noted that K.S.A. 1978 Supp. 72-1106(*d*) provides that the time reserved for in-service training programs may be considered part of the school day for an aggregate amount of time equal to the amount of time in excess of the school year which is scheduled by a board of education for similar activities.

The 180 school days for pupils and the handling of credit days earned for in-service training days are statutory. They are, therefore, not negotiable, mandatorily or permissibly. The parties cannot by collective negotiation change a statutory provision. The proposal as to number of contract days does not come within

the statutory definition of terms and conditions of professional service and is not mandatorily negotiable.

However, on the number of days of in-service training to be required in excess of the 180 days, these are mandatorily negotiable under K.S.A. 1978 Supp. 72-5413(*l*) as affecting hours and amounts of work. See also *Chee-Craw Teachers' Ass'n v. U.S.D. No. 247,* 225 Kan. 561, 593 P.2d 406 (1979). The proposal as to extra days for in-service training does come within the definition of terms and conditions of professional service and is mandatorily negotiable.

The trial court properly decided both facets of this proposal. On appeal the judgment of the trial court is affirmed as to the proposal "contract days."

The second point raised on appeal, although couched in·different terms, concerns the teachers' proposal to require the school library be kept open one week before school opens and one week after the closing of school. The trial court held that the number and designation of the days when the school library will be kept open to students, teachers, and public was a basic educational policy decision and strictly a management decision. We agree. The proposal as to whether the school library should be kept open before and after the school year does not come within the statutory definition of terms and conditions of professional service and is not mandatorily negotiable. The proposal did not concern itself with the work impact upon library personnel in the system. On appeal the judgment of the trial court is affirmed as to the library proposal.

The third point raised on appeal concerns the question of negotiation of supplemental contracts. The trial court held that supplemental contracts were mandatorily negotiable. We disagree.

K.S.A. 72-5412a provides:

"The board of education of any school district may enter into a supplemental contract of employment with any employee of the district. As used in this section 'supplemental contract' means a contract for services other than those services covered in the principal or primary contract of employment of such employee, and shall include but not be limited to such services as coaching, supervising, directing and assisting extra curricular activities, chaperoning, ticket taking, lunch room supervision and other similar and related activities. None of the provisions of article 54 of chapter 72 of Kansas Statutes Annotated, including the sections thereof in the 1971 cumulative pocket-part supplement, shall be applicable to any employee's supplemental contract."

This court has held that supplemental contracts are not subject mandatorily to collective negotiation because of the express statutory exclusion contained in K.S.A. 72-5412a. *NEA-Topeka, Inc. v. U.S.D. No. 501*, 225 Kan. 445, 592 P.2d 93 (1979); *Chee-Craw Teachers' Ass'n v. U.S.D. No. 247*, 225 Kan. 561, 593 P.2d 406 (1979). On appeal the judgment of the trial court as to the proposal on supplemental contracts is reversed.

The final point raised by the board concerns the assessment of costs in the district court. The board argues that its position in the trial court was upheld on more than half the points. The assessment of costs in the trial court is discretionary with that court. Various matters other than a party's trial success may affect the assessment. See *Osborne v. Fakes*, 178 Kan. 373, 286 P.2d 156 (1955). We are not able to say the trial court abused its discretion and the judgment assessing costs to the defendant in the trial court is affirmed.

## CROSS-APPEAL BY TEACHERS

The first point raised concerns permitting each teacher to select and separately order consumable workbooks and materials to allow for the individual teacher's differences and individualized methods of instruction. The district court held the proposal not mandatorily negotiable. We agree. Such a proposal would have direct impact on budget control and accounting factors which are of such nature they must be left up to the exclusive control of the board as a management function. The proposal as to materials and supplies does not come within the statutory definition of terms and conditions of professional service and is not mandatorily negotiable. On cross-appeal the judgment of the trial court on the teachers' proposal as to materials and supplies is affirmed.

The second point raised by the teachers concerns their proposal on limitation of class size. The district court held that class size was not mandatorily negotiable. We agree. This has been previously determined by this court in *NEA-Topeka, Inc. v. U.S.D. No. 501*, 225 Kan. at 451. The proposal as to class size does not come within the statutory definition of terms and conditions of professional service and is not mandatorily negotiable. On cross-appeal the judgment of the trial court on the teachers' proposal on class size is affirmed.

The third point raised by the teachers concerns a proposal to govern the actions of the board in handling a possible required

reduction of personnel and the order of recall in case of a possible later rehiring. This court adopts the well reasoned decision of the trial court on this proposal:

"Reduction of personnel obviously relates [to a certain extent] to Termination of Contracts. Recall of personnel obviously will affect future hiring and employment practices of the school district which in turn can affect the basic educational policies and the curriculum and courses of study offered by the district. Both subjects were formerly covered to some extent by statute (K.S.A. 72-5401 to 72-5407). These statutes have since been repealed by the legislature and are no longer law.

"Termination of contracts with the guarantee of procedural due process is now provided by K.S.A. 72-5437 to 72-5446. The continuing contract law as set out in K.S.A. 72-5410 to 72-5412 and K.S.A. 72-5437 relates to some extent to this subject matter. Specifically, K.S.A. 72-5412 provides that *'any contract of employment made* by the board of education of any school district *prior to the public hearing on the budget* of such school district *shall be voidable in case adequate funds are not available* in such budget for the compensation provided for in such contracts.' K.S.A. 72-5413(L) upon which the plaintiffs rely to support their demand to negotiate on the subject of reduction and recall of personnel goes on to provide further that 'nothing in this act . . . shall authorize the *adjustment or change of such matters which have been fixed by statute* or by the constitution of this state.' Construing these provisions of the statutes in context to each other would indicate to the Court that the legislature intended to limit the authority of the school board to make binding contracts of employment in excess of its duly authorized budget and further to limit the areas of negotiation under the Collective Negotiations Act by not permitting either the school board or the teachers' association to contract to adjust or change such matters as have been fixed by statute or by the constitution of the state.

"Plaintiffs contend that reduction and recall automatically affects wages and salaries, retirement, resignations and termination of contracts. However, broken down to its simplest meaning, reduction and recall actually means jobs—available jobs and job security—which the school board may or may not be able to provide depending upon circumstances and conditions totally beyond the control of the board.

"The Court recognizes that reduction and recall of personnel involves elements that have application both to the basic educational policies of the school district as well as to the terms and conditions of service of the professional employee.

"In the first instance the school board must make a basic policy or 'management' decision as to whether a reduction or a recall of personnel is required. The circumstances under which reduction or recall become necessary are generally brought about by external factors over which the board often has little or no control. In carrying out its responsibilities to the electorate it serves, the board must be free to exercise its discretion and to carry out its basic decision-making process in managing the business of the school district as times and circumstances change.

"The Court also recognizes that any reduction or recall of personnel is a matter of considerable concern to the teachers, and the method by which the same is

achieved has a significant impact on the terms and conditions of professional service. The important aspect of this to the teachers is illustrated by the questions: 'Should there be a necessary reduction or recall of personnel, who will be the first to be laid off work and in what order?' And, 'Who will be the first to be called back to work and in what order?'

"If all teachers were equally qualified, had equal strengths in all subjects in which they were certificated, and were all certificated to teach the same courses of study, the problem presented would be simplified to some extent. However, this is not the case, and there are additional complicating factors to be considered. These are that the individual teacher's job security, whether the teacher is a member of the teachers' association or not, is already protected by statute under the Continuing Contract Law and the Due Process Procedure on Contract Termination. Strict limitations are placed on the school board by these statutes, and *such matters as have been fixed by statute may not be adjusted or changed by the parties.* For the parties to contract on the subject of reduction or recall of personnel would be to adjust or change the effects of those statutes. And to further limit the discretion of the school board by requiring collective negotiations with the teachers' association on the question of reduction and recall of personnel or the manner by which the same is achieved would have serious implications in the following areas of responsibility of the board: (1) to determine the curriculum, courses of study and educational activities offered by the school district; (2) to determine the basic educational policies of the school district; (3) and to determine the particular qualifications and general level of quality of personnel required by the school district to carry out those areas of responsibilities enumerated in (1) and (2) above.

"Accordingly, the Court finds that reduction and recall of personnel involves basic policy decisions such as whether, when, to what extent, and in which subject matters or educational areas offered in the school curriculum will there be a reduction or a recall of personnel. The Court finds that these types of decisions are the exclusive legal responsibility of the board in the exercise of its delegated authority."

This court holds the proposal for reduction and recall of teachers does not come within the statutory definition of terms and conditions of professional service and is not mandatorily negotiable. On cross-appeal the judgment of the trial court on the teacher's proposal for reduction and recall procedures is affirmed.

The final point raised by the teachers concerns the question of admissibility of evidence. The director of negotiation services for the Kansas-NEA had prepared and attempted to offer during the trial in the district court Exhibit E. He testified he had examined a number of 1977-78 contracts between local teacher associations and school boards throughout Kansas. From his examination he had analyzed the subjects of negotiation and was prepared to submit his summary, Exhibit E, to show how many contracts over

the state contained the same negotiated subjects in dispute in Parsons. It was claimed that the exhibit was evidence of the amenability of the subjects in dispute to the negotiation process.

The trial court excluded the exhibit because the information was assembled from contracts negotiated before K.S.A. 1978 Supp. 72-5413 was effective. This statute defined "terms and conditions of professional service" for the first time. Under the present case law a proposal is mandatorily negotiable if it falls within the category of terms and conditions of professional service defined in the statute. Amenability to the negotiation process of the subjects in dispute is not the test of admissibility. The test is relevance to the question of whether a proposal falls in the category of terms and conditions of professional service so as to be mandatorily negotiable. Proposals may be negotiated whether mandated under the statute or not, for the parties by agreement may negotiate many proposals which do not fall within the statutory definition. Therefore the district court properly excluded Exhibit E.

One final matter has been raised for decision in this court. The district court in its judgment found that the defendant-board's request for a permanent injunction should be granted and that the plaintiff-teachers should be enjoined from proposing for negotiation those items or those matters which the court determined to be not mandatorily negotiable. Both sides have stipulated that this was in error. We agree. The parties to collective negotiations may propose items which may be negotiable only by agreement of both parties. The items held not mandatorily negotiable may be negotiated by agreement of both parties, except items controlled by statute. The portion of the judgment of the district court to the contrary is reversed.

The judgment of the district court is affirmed in part and reversed in part on the appeal and affirmed on cross-appeal.

HERD, J., not participating.