No. 50,222

TRI-COUNTY EDUCATORS' ASSOCIATION, *Appellee,* v. TRI-COUNTY SPECIAL EDUCATION COOPERATIVE No. 607, *Appellant.*

(594 P.2d 207)

Opinion filed May 5, 1979.

*William H. Dye,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *B. D. Watson,* of Independence, was with him on the brief for the appellant.

*E. L. Kinch,* of Ratner, Mattox, Ratner, Barnes & Kinch, P. A., of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: Tri-County Educators' Association, a professional employees' organization, as that term is used in K.S.A. 72-5413 *et seq.,* as amended, commenced this injunction action in Montgomery District Court against Tri-County Special Education Cooperative No. 607. The Association is the representative of the professional employees (teachers) employed by the Cooperative. The Association's principal duty as such representative is the negotiation of employment contracts. The Cooperative, with principal offices at Independence, Kansas, is organized under K.S.A. 12-2904 and K.S.A. 1975 Supp. 72-8230 to provide special education services to member unified school districts. It has the powers and duties of a unified school district insofar as employer-employee relations and professional negotiations are concerned. The parties had professional negotiation agreements covering the 1976-1977 and 1977-1978 school years.

The Association's president delivered a written notice to the Cooperative on December 1, 1977, requesting negotiations for the 1978-1979 school year with respect to some 24 articles, many of which were quite lengthy; in all, the listing of the items to be negotiated covers some 31 single-spaced pages. Prior to the commencement of negotiations, the Cooperative notified the Associ-

ation that it did not wish to negotiate any items which were not mandatorily negotiable. It then listed certain of the proposed articles and parts thereof which it deemed not mandatorily negotiable.

The Association, claiming that the specified items were mandatorily negotiable, commenced this action. It contended that the board was not bargaining in good faith, and therefore it sought a mandatory injunction. Trial was held. The trial judge found that the Cooperative failed to meet its obligation to negotiate by adopting an adamant, unyielding position that the proposals were not the subject of mandatory negotiation. As to the Association, the trial court found that:

"[T]he proposal of the association in the present case is an artfully constructed combination of the needs, the desires, the possibly necessary, the unnecessary, the wishful and possibly illegal, so intermingled as to make negotiation difficult if not impossible *if the proposals are insisted upon as proposed.* It appears that what is sought is not agreement but dominance."

The judge concluded that neither party was acting in bad faith. He held that all of the disputed items were negotiable, saying:

"[T]his Court does not intend to attempt to separate the 20 items submitted to the Court into mandatorily negotiable, permissively negotiable, or non-negotiable categories. The breaking down of the proposals, their separation into areas of agreement and disagreement, within the items themselves, if necessary, is the responsibility of the negotiating teams and not the Court. There has in fact been no negotiation upon these items. . . . The Court is of the opinion that all of the items, except the preamble which is merely a preliminary statement, are subject to negotiation as negotiation is defined in K.S.A. 72-5413(l)."

The trial judge then issued a temporary injunction requiring the Cooperative to enter into professional negotiations in a good faith attempt to reach agreement on all issues. The order provides that negotiations are to continue until "agreement is reached or areas of agreement are exhausted and disagreement results in impasse, or until the time element requires that the school board move unilaterally, at which time this temporary injunction shall expire." The Cooperative appeals.

As its first point, the Cooperative asserts that the trial court erred in refusing to analyze each disputed proposal to determine whether any were mandatory subjects of collective bargaining. We agree that the court should have done so; however, at the time this case was tried and decided the trial judge did not have guidance from our opinion in *Chee-Craw Teachers' Ass'n v.*

*U.S.D. No. 247,* 225 Kan. 561, 593 P.2d 406, (1979), which case was decided on March 31 of this year. In that case we addressed this specific point. While we need not repeat here the full discussion of the issue set forth in *Chee-Craw,* the following quotation from that opinion bears repeating:

"[I]t is often difficult or impossible to make progress in negotiations while key proposals are involved in litigation as to whether they are mandatorily negotiable.

"In order to effectuate the intent of the Collective Negotiations Law it is imperative to break the present bottleneck in collective negotiations. To accomplish this, wherever possible, potential areas of dispute as to whether an item is mandatorily negotiable must be eliminated. Expeditious judicial determination of any remaining areas of dispute must be accomplished. We therefore establish the following rules of law and procedure:

"1.   In actions involving disputes as to whether proposals are mandatorily negotiable, the district court shall determine the matter in the same manner provided by the impasse procedure in K.S.A. 1978 Supp. 72-5426, which provides for a summary hearing commenced within five days, etc.

"2.   The district court shall, in its determination, decide such negotiability questions as a matter of law." (p. 567.)

Ordinarily, a trial court need determine only whether specific proposals are or are not mandatorily negotiable. Here, the trial court held that all of the proposals, which are part of the record before us, must be considered by the board and were mandatorily negotiable. The record is sufficient for us to determine whether the specific proposals are mandatorily negotiable and we will do so.

Before turning to the proposals, a brief review of the principles upon which mandatory negotiability is to be determined is appropriate. Items which are mandatorily negotiable by virtue of their specific inclusion in K.S.A. 1978 Supp. 72-5413($l$) are: salaries and wages, hours and amounts of work, vacation allowance, holiday, sick and other leave, number of holidays, retirement, insurance benefits, wearing apparel, pay for overtime, jury duty, grievance procedure, disciplinary procedure, resignations, and termination of contracts. Those enumerated items are mandatorily negotiable whether or not they meet the "impact test." One further class of items is made mandatorily negotiable by the same statute: matters which meet the "impact test"—those which have a greater direct impact on the well-being of the individual professional employee than on the operation of the school system. Mandatorily negotiable items, when proposed by either party, must be negotiated in good faith by both parties.

Other matters which the parties mutually agree upon as properly related to professional service *may* be negotiated only if both parties are willing to negotiate them. Such items are "permissively negotiable." Matters which have been fixed by statute or by the constitution of this state are not negotiable under any circumstances. Parties are not required *to negotiate permissible* items, and may not negotiate those that are non-negotiable.

Throughout our recent cases, frequent reference is made to the "first" and "second" lists set forth in *National Education Association v. Board of Education,* 212 Kan. 741, 751, 512 P.2d 426 (1973) (commonly referred to as Shawnee Mission). All but three of the items on the Shawnee Mission first list are now included within the statute quoted above, K.S.A. 1978 Supp. 72-5413(*l*). Those items included within the statute are, as we have already noted, mandatorily negotiable. Three items from the Shawnee Mission first list—probationary period, transfers, and teachers' appraisal procedure—are *not* mandatorily negotiable. The items on the Shawnee Mission second list, curriculum and materials, payroll mechanics, certification, class size, the use of paraprofessionals, the use and duties of substitute teachers, teachers' ethics, and academic freedom, are *not* mandatorily negotiable, with one exception: "dues checkoff" or payroll deduction of teachers' association dues (which might be considered a part of "payroll mechanics," and which is sometimes included under that heading) is mandatorily negotiable. *NEA-Topeka, Inc. v. U.S.D. No. 501,* 225 Kan. 445, 592 P.2d 93 (1979); and see *Chee-Craw,* 225 Kan. 561. We now turn to the specific proposals before us.

The negotiability of many of the items proposed by the Tri-County Association has already been thoroughly considered and determined in cases which we have decided in recent months, and we need not repeat here what we so recently said. We have held that all of the following proposals, identified by the article number under which each was included within the Association's listing of items, are not mandatorily negotiable:

Article 2, paragraph A—Nondiscrimination on the basis of race, creed, color, religion, etc.

Article 4, section II—Transfer or reassignment of employees, both voluntary and involuntary

Article 6—Evaluation of employees, including all proce-

dures, forms, methods, and records in connection therewith. (See K.S.A. 1978 Supp. 72-9001, *et seq.*)

Article 7—Dismissal Procedure, Reduction in Personnel, Recall of Employees

Article 14, paragraph A—Teacher Rights and Responsibilities—Freedom of Expression Encouraged

Article 14, paragraph B—Teacher Rights and Responsibilities—A guarantee of the teacher's right to be active politically

Article 14, paragraph D—Teacher Rights and Responsibilities—Allocation by the Board of funds for books, instructional materials, supplies, and equipment

Article 16—Paraprofessional aides

Article 19—Substitutes, including orientation, preparation, pay, qualifications, and coverage

Article 21, paragraph B—Class size

Article 21, paragraph C—Teaching materials, including the establishment of an instructional materials center and training staff

Article 22—Facilities and equipment, including books and expendables

Article 23, paragraph C (this is the second article numbered "23")—Procedural understandings, Nondiscrimination (against any teacher for his or her participation in the negotiation process)

Article 23, paragraph D—Impasse, including mediation and arbitration

Additionally, and although not included within the 24 Articles submitted, dispute arose over the negotiability over the form and terms of the individual teacher's contract. We held that this item was not mandatorily negotiable in *Chee-Craw,* 225 Kan. at 570.

Rulings on each of the foregoing items will be found in *Chee-Craw Teachers' Ass'n v. U.S.D. No. 247,* 225 Kan. 561, 593 P.2d 406 (1979); *NEA-Parsons v. U.S.D. No. 503,* 225 Kan. 581, 593 P.2d 414 (1979); and *NEA-Topeka, Inc. v. U.S.D. No. 501,* 225 Kan. 445, 592 P.2d 93 (1979).

The following proposals have been held to be mandatorily negotiable:

Article 9—Disciplinary actions against employees. Discipli-

nary procedure is a "listed" item in K.S.A. 1978 Supp. 72-5413(*l*).

Article 15—Association rights. This topic is mandatorily negotiable only in the five specific areas enunciated in *NEA-Topeka, Inc. v. U.S.D. No. 501*, 225 Kan. at 450-451, items No. 1 through 5; other items included in Tri-County Association's Article 15 are not mandatorily negotiable

Article 23—Inservice Education. (This is the first Article numbered 23.) We held that a similar proposal to establish a committee to make recommendations to the board as to inservice education was mandatorily negotiable. *Chee-Craw Teachers' Ass'n v. U.S.D. No. 247*, 225 Kan. at 570. See also *NEA-Parsons v. U.S.D. No. 503*, 225 Kan. 581.

Finally, we turn to those areas which we have not previously considered.

Article 17—is entitled Safety Provisions. It reads: At all times the Board shall provide, in each building, properly trained personnel and the equipment necessary to ensure proper first aid treatment for employees and students.

The subject is not a statutorily designated item, K.S.A. 1978 Supp. 72-5413(*l*), and therefore we must apply the impact test. The employment of trained personnel and the providing of first aid equipment and supplies would be beneficial to teachers and students alike; but the financial impact of the mandated employment of trained personnel, such as registered nurses, in each school in the districts served by the Cooperative could be substantial. We hold that the topic fails the impact test and remains the prerogative of management. It is not mandatorily negotiable.

Article 18, Affirmative Action

This item proposes that there be provided by the Cooperative equal educational opportunity for all students and equal employment opportunities for all job applicants and all employees. Federal and state law already govern the Cooperative's acts in this area. K.S.A. 1978 Supp. 44-1001 *et seq.;* 42 U.S.C.A. § 2000d *et seq.;* 42 U.S.C.A. § 2000e *et seq.;* and see *Brown v. Board of Education of Topeka*, 347 U.S. 483, 98 L.Ed. 873, 74 S.Ct. 686, 38

A.L.R.2d 1180 (1954); and *Harrington v. Vandalia-Butler Board of Education*, 418 F. Supp. 603 (D. Ohio 1976), *rev'd on other grounds*, 585 F.2d 192 (6th Cir. 1978). Since equal educational and employment opportunities are mandated by statute and also by federal and state regulation, the item is not negotiable.

Article 20, Special Resource Personnel

This article provides for the employment by the Cooperative of a minimum number of specialists, including speech pathologist, learning disabilities consultants, school nurse, physical therapists, school psychologists, and work-study coordinator. This would have a far greater impact on the operation of the Cooperative than on the well-being of the individual professional employee. It therefore fails the impact test and is not mandatorily negotiable.

The temporary injunction entered by the trial court has in all probability expired by its terms; at any rate, we see no need for injunctive relief now. Likewise, there is no need to remand this case to the trial court.

The judgment below is affirmed, insofar as it holds Article 9, a portion of Article 15, and the first Article No. 23 to be mandatorily negotiable; otherwise, the judgment is reversed and the injunction dissolved.