(856 P.2d 1343)
No. 69,068

BOARD OF EDUCATION, UNIFIED SCHOOL DISTRICT NO. 314, Brewster, Thomas County, Kansas, *Appellant*, v. KANSAS DE-PARTMENT OF HUMAN RESOURCES, An Agency of the State of Kansas, by and through its Secretary, Joe Dick, and BREWSTER-NEA, *Appellees*.

Opinion filed July 23, 1993.

*J. Ronald Vignery,* of Goodland, for appellant.

*David Schauner* and *Jonathan Paretsky,* of Kansas-National Educational Association, of Topeka, for appellee Brewster-NEA.

No appearance by appellee Kansas Department of Human Resources.

Before GERNON, P.J., ELLIOTT and ROYSE, JJ.

GERNON, J.: The Board of Education of Unified School District No. 314 of Thomas County (the Board) appeals a district court's ruling which affirmed a finding that the Board had committed an unfair labor practice. The finding involved a change by the Board in the teacher evaluation process without first negotiating the matter with Brewster-NEA (NEA).

## Facts

Pursuant to the legislative mandate for the evaluation of certificated school personnel found in K.S.A. 72-9001 *et seq.*, the Board formed an evaluation committee in January of 1989. The committee was to develop a teacher evaluation instrument.

A case which had a potential impact on the evaluation process in the present case, *U.S.D. No. 352 v. NEA-Goodland,* 246 Kan. 137, 785 P.2d 993 (1990), was filed on January 19, 1990. The Kansas Supreme Court, in *NEA-Goodland,* held that teacher evaluation procedures are mandatorily negotiable, while evaluation criteria are not.

"K.S.A. 72-5414 gives teachers the right to organize in order to participate in professional negotiations with boards of education, 'for the purpose of establishing, maintaining, protecting or improving terms and conditions of professional service.' K.S.A. 72-5413(l) defines 'terms and conditions of professional service' in pertinent part as 'disciplinary procedure; resignations; termination and nonrenewal of contracts; reemployment of professional employees; terms and form of individual professional employee contract; probationary period; [and] professional *employee appraisal procedures.'* (Emphasis added.)" 246 Kan. at 141.

On January 31, 1990, the Board and NEA submitted letters noticing the items each desired to negotiate for inclusion in the 1990-91 agreement. Neither notice included the items of evaluation form or procedure.

In April of 1990, the Board directed its superintendent to begin revising the evaluation document then in use. No announcements were made requesting NEA or teacher input on the form, nor were copies of the proposed form circulated for comment prior to the May 1990 meeting of the Board. The proposed form was read at the May 1990 Board meeting and was adopted without objection at the June 1990 Board meeting.

The new evaluation form was included in the teachers' handbook distributed in August 1990. NEA then wrote the superin-

tendent, requesting that the new evaluation form not be used until a new form could be developed through the negotiation process. The superintendent responded by indicating that the changes involved criteria, not procedure, and, therefore, were not mandatorily negotiable.

In September 1990, NEA filed a complaint against the Board with the Kansas Department of Human Resources, alleging that the Board had engaged in a prohibited practice by "unilaterally impos[ing] a change in the evaluation procedures by imposing a new evaluation instrument."

A hearing was held on the matter, which resulted in a finding that the Board failed to negotiate in good faith with NEA in violation of K.S.A. 72-5430(b)(5). The Board was ordered to cease and desist from using the new evaluation form and from refusing to negotiate in good faith with NEA over procedures accompanying the implementation of the evaluation criteria.

The Secretary of the Department of Human Resources declined review of the order, in accordance with K.S.A. 77-527(a)(2)(a), and the Board petitioned for judicial review. The district court adopted the findings of fact set out in the initial order and concluded that "[t]he new evaluation form is an evaluation procedure and involves the 'mechanics' and the 'how' and 'when' of employer evaluation and is mandatorily negotiable." The Board appeals.

## Standard of Review

K.S.A. 72-5430a "specifically provides for a trial de novo to the district court in cases arising under the Professional Negotiations Act." *NEA-Goodland,* 246 Kan. at 139. Pursuant to K.S.A. 77-623, decisions on petitions for judicial review of agency actions are reviewable by this court as in any other civil case. *NEA-Goodland,* 246 Kan. at 139.

## Prohibited Practice

*NEA-Goodland* is directly on point. The court noted that "if a topic is by statute made a part of the terms and conditions of professional service, then a topic is by statute made mandatorily negotiable." 246 Kan. at 141. See *NEA-Wichita v. U.S.D. No. 259,* 234 Kan. 512, 519-20, 674 P.2d 478 (1983). K.S.A. 72-5413(l) defines "[t]erms and conditions of professional service" as including "professional employee appraisal procedures." In *NEA-*

*Goodland,* the court held that appraisal criteria and appraisal procedure are independent of one another: "[E]valuation criteria should be defined as a managerial policy solely within the domain of the Board, whereas the evaluation procedure should be defined as the mechanics of applying such criteria." 246 Kan. at 142-43. Thus, because appraisal procedures are specially included by statute as a term and condition of professional employment, appraisal procedures are mandatorily negotiable while appraisal criteria are not.

Failure to negotiate an item that by its nature is mandatorily negotiable is a prohibited practice under K.S.A. 72-5430. K.S.A. 72-5430(b) provides: "It shall be a prohibited practice for a board of education or its designated representative willfully to: . . . (5) refuse to negotiate in good faith with representatives of recognized professional employees' organizations." In the present case, NEA contends that, as the new evaluation instrument required new evaluation procedures, failure by the Board to negotiate these procedures with NEA amounted to a refusal to negotiate in good faith when the Board was mandatorily obligated to do so.

The case law clearly states that only evaluation procedures are mandatorily negotiable. The question thus becomes whether the new evaluation instrument unilaterally adopted by the Board contains any procedural matters.

The Board steadfastly maintains that the new form only addressed evaluation criteria and that its intent was to follow the law as announced in *NEA-Goodland.* The district court disagreed with the Board, finding that "[t]he new evaluation form is an evaluation procedure and involves the 'mechanics' and the 'how' and 'when' of employer evaluation and is mandatorily negotiable." The district court did not make its own findings of fact from the record but adopted the findings in the initial order.

The initial order from the Kansas Department of Human Resources focused on the fact that the Board sought to implement new evaluation criteria without having first negotiated the procedure by which the evaluations would take place. The following passage from the initial order is illustrative.

"The Board argues that no new evaluation procedures were required to implement the new evaluation criteria. The same evaluation procedures were in effect February 1, 1990 that were used as of February 1, 1989, and in

fact were the same procedures used under the old criteria. Accordingly, no duty to negotiate evaluation procedures existed before implementation.

"The Board's reliance upon differentiating between new and old procedures is misplaced. The inquiry must be whether procedures are required to implement the new criteria, not whether existing procedures exist which can be used to implement the new criteria. While in some cases existing procedures may be used to implement new criteria, the question is whether such procedures result in the most accurate evaluation of the criteria. It is that question which significantly impacts upon the interest of the professional employee and outweighs the Board's managerial prerogatives, and it is that question which the professional employees' exclusive representative must have the opportunity to address in professional negotiations.

"With the adoption of the new criteria the Board, as discussed above, had two alternatives available to satisfy its duty to negotiate in good faith; to notice the procedures and request negotiations, or to provide the exclusive employee representative timely and adequate notice of the intended procedures to allow it to determine if negotiation is required. Clearly the Board did not seek to negotiate procedures and intended to implement the new criteria using the existing procedures. The Board did, through the teacher's handbook distributed in August, provide notice to the professional employees and their exclusive representative of the criteria to be used. No notice of the procedures to be employed to implement the criteria [was] disclosed at that time. This takes on added importance since no written evaluation procedures existed, and even Superintendent Lavid was uncertain whether the procedures she instituted after assuming her position were the same as used by her predecessor.

"With this background it is not unreasonable for the professional employees of the district to be concerned about future evaluations. Despite the lack [of] adequate notice on procedures to be used to implement the evaluation criteria, the NEA on August 31, 1990 wrote to Superintendent Lavid indicating '[t]he procedures for evaluation are subject to the negotiation process' and requesting she 'continue the form used last year, until a successor document can be developed through the negotiations process.' While admittedly the request to negotiate procedures to implement the evaluation criteria could have been more artfully drafted, the letter taken as a whole sufficiently provides information sufficient for a person to reasonably understand the intent of the letter and the desires of the NEA. The Board did not respond to the letter or indicate in any manner a willingness to proceed to negotiations. The fact that the Board had a good-faith belief that it did not have to negotiate procedures where no new procedures were adopted does not serve as a defense to a charge of failing to bargain in good faith. Accordingly, the Board's failure to enter into professional negotiations concerning the procedures employed to implement the new evaluation criteria when requested by the NEA constitutes a failure to negotiate in good faith and a prohibited practice as set forth in K.S.A. 72-5430(b)(5)."

Substantial competent evidence supports the finding that the Board's refusal to negotiate the evaluation procedures necessary for implementation of the new criteria amounted to a prohibited practice under K.S.A. 72-5430(b)(5). The criteria could not be implemented in the absence of adequate procedures, and the nature, content, and quality of these procedures were mandatorily negotiable. While the Board did not err in unilaterally adopting the new criteria, it could not implement the new criteria without corresponding procedures that had been negotiated by both sides.

On the surface, the "old" and "new" evaluation forms look remarkably similar, but they are actually quite different. The Board unilaterally changed the rating methodology for the teachers, and Patrick Lehman, a school board member, testified that this was a change in the "mechanics" of applying the criteria listed in the left-hand column. See *NEA-Goodland*, 246 Kan. at 143 ("evaluation procedure should be defined as the mechanics of applying such criteria.") The Board also made changes in requiring lesson plans to be submitted for evaluation and requiring that they be comprised of greater detail. Thus, the new form changed the frequency of evaluations and the manner in which the teachers' work was evaluated.

We reject the Board's contention that, if the district court's ruling is allowed to stand, it will render *NEA-Goodland* meaningless. Our holding does not infringe on the managerial prerogative to draft and adopt criteria. To the contrary, our holding gives meaning to the *NEA-Goodland* case in that we recognize that the implementation of a school board's evaluation criteria necessarily involves procedures. Plainly, these procedures are subject to mandatory negotiation with the teachers.

### Increase in Hours and Work

NEA next argues that the Board improperly placed new lesson plan requirements in the evaluation criteria, which substantially increased employee workloads. Hours and amount of work are included within the definition of terms and conditions of employment and are mandatorily negotiable. See K.S.A. 72-5413(l).

NEA presented this issue before both the district court and the Department of Human Resources, but neither relied on this ground for its ruling.

Although it is an issue which needs to be addressed, we are unable to consider it on appeal. The Board did not raise this issue on appeal, and NEA did not file a notice of cross-appeal. Therefore, this court cannot consider this issue. See *Barkley v. Toland,* 7 Kan. App. 2d 625, 627; 646 P.2d 1124, *rev. denied* 231 Kan. 799 (1982).

### Department of Human Resources' Appearance

Lastly, the Board asserts that the Department of Human Resources should not be allowed to appear as an advocate after serving in a judicial rather than a legislative capacity.

The Board has abandoned this argument based upon *U. S. D. No. 279 v. Secretary of Kansas Dept. of Human Resources,* 247 Kan. 519, 802 P.2d 516 (1990). The court in that case concluded that, like the Director of Workers Compensation, the Secretary of the Department of Human Resources performs a quasi-judicial function in investigating, initiating, and conducting hearings on impasse resolution procedures and prohibited practice complaints. 247 Kan. at 534. The court held that the delegation of authority to the Secretary does not violate Article 2, § 1 of the Kansas Constitution, which provides that "[t]he legislative power of this state shall be vested in a house of representatives and senate." 247 Kan. at 534-35; Kan. Const. Art. 2, §. 1.

The Board did not brief this issue. " 'Where the appellant fails to brief an issue, that issue is waived or abandoned.' " *Plummer Development, Inc. v. Prairie State Bank,* 248 Kan. 664, 666, 809 P.2d 1216 (1991).

Affirmed.