No. 78,126

Junction City Education Association, *Appellant,* v. Board of Education, Unified School District No. 475, Geary County, Kansas, *Appellee.*

(955 P.2d 1266)

Opinion filed March 6, 1998.

*David M. Schauner*, of Topeka, argued the cause, and *Gregory C. Brownfield*, of Topeka, was with him on the briefs for appellant.

*David P. Troup*, of Weary, Davis, Henry, Struebing & Troup, L.L.P., of Junction City, argued the cause and was on the brief for appellee.

*David C. Cunningham*, of Topeka, was on the brief for *amicus curiae* Kansas Association of School Boards.

The opinion of the court was delivered by

LARSON, J.: This appeal raises a jurisdiction issue and the question of whether an involuntary transfer provision is mandatorily negotiable under the Professional Negotiations Act (Negotiations Act), K.S.A. 72-5413 *et seq.*

We first set forth sufficient facts to show how the issues have come before us.

The Junction City Education Association (Education Association) and the Board of Education of the Unified School District No. 475, Geary County, Kansas (Board), entered into negotiations for an agreement governing the terms and conditions for professional services for the 1996-97 school year.

A negotiated agreement for the 1995-96 school year contained the following provision:

"ARTICLE XIII—INVOLUNTARY TRANSFERS

"A. When it is determined by the personnel office that a teaching assignment

must be changed within five (5) days of the first contract day of any school year, that teacher is eligible to receive additional compensation [of] $150. A different teaching assignment is defined as a change from one grade level or specialty to another, or the change from one classroom to another within the same school building.

"B. If such change requires a move from one building to another, that teacher is eligible to receive additional compensation of $300. A move is defined as a change from one grade level to another or to the same grade level in another building."

Negotiations regarding the 1996-97 agreement reached an impasse, and the parties jointly implemented impasse procedures pursuant to K.S.A. 72-5426 with the Secretary of the Department of Human Resources (Secretary) to resolve their disputes. One of the disputed issues was whether Article XIII from the 1995-96 agreement was mandatorily negotiable under the Negotiations Act.

Mediation was unsuccessful. A factfinder was appointed, and the factfinding hearing was imminent on October 17, 1996, when the Education Association filed a declaratory judgment action seeking a determination in the Geary County District Court that the involuntary transfer proposal was mandatorily negotiable. The Education Association requested an injunction requiring the Board to negotiate the terms of the involuntary transfer proposal.

The Education Association's petition asked that a summary hearing commence within 5 days. The Board moved to dismiss, alleging the district court lacked subject matter jurisdiction due to the failure of the Education Association to exhaust administrative remedies. The Board also filed a memorandum on the merits in opposition to the petition. A nonevidentiary hearing was held on November 1, 1996.

At the conclusion of the hearing, the court ruled it had jurisdiction pursuant to K.S.A. 60-1701, as well as *Chee-Craw Teachers Ass'n v. U.S.D. No. 247*, 225 Kan. 561, 566-68, 593 P.2d 406 (1979). The court further ruled that a provision for involuntary transfers is not a mandatorily negotiable item, nor is compensation for such transfers. The Education Association appeals the denial of its requested relief.

The Board has pointed out in its brief that the parties proceeded to factfinding and ultimately entered into a negotiated agreement

for the 1996-97 school year which did not contain the involuntary transfer proposal.

Although it may be argued that by ultimately entering into a negotiated agreement for the 1996-97 school year the parties have rendered this appeal moot, see *Shanks v. Nelson*, 258 Kan. 688, 907 P.2d 882 (1995), this case appears to warrant an exception. In *Allenbrand v. Contractor*, 253 Kan. 315, Syl. ¶ 3, 855 P.2d 926 (1993), we recognized an exception to the general rule regarding appellate review of moot issues:

> "An exception to the general rule regarding whether a case is moot exists if the case involves a question of public interest. Appellate courts are inclined to retain an appeal on this basis if the question involves one that is likely to arise frequently in the future unless it is settled by a court of last resort."

An example of the application of this exception is *Stauffer Communications, Inc. v. Mitchell*, 246 Kan. 492, 789 P.2d 1153 (1990), where the hearings a reporter sought to attend had ended by the time the case was considered on appeal. The parties and the court agreed the situation would recur and continue to evade appellate review. Thus, we refused to dismiss the appeal as moot.

Questions involving whether an item is mandatorily negotiable under the Act and the proper procedure for raising the matter are issues likely to recur throughout the state and evade review. We elect to answer the jurisdictional and procedural issue raised for the assistance of school boards and negotiating units in the future. See *Roe v. Wade*, 410 U.S. 113, 125, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973).

The district court held, without analysis, that it had subject matter jurisdiction of this case pursuant to K.S.A. 60-1701 and *Chee-Craw Teachers Ass'n v. U.S.D. No. 247*, 225 Kan. at 566-68. Amendments to the Negotiations Act subsequent to the date of and in specific response to the *Chee-Craw* decision renders this conclusion suspect.

A question regarding jurisdiction is an issue of law over which we have unlimited review. Resolving this question involves statutory interpretation, which is also a legal issue. It is our function to interpret a statute to give it the intended effect. *U.S.D. No. 279 v.*

*Secretary of Kansas Dept. of Human Resources*, 247 Kan. 519, 524, 802 P.2d 516 (1990).

*Chee-Craw* held the Negotiations Act was designed "to statutorily define the scope of mandatory negotiations and to provide the impasse procedure as a tool to assist in reaching a negotiated agreement." 225 Kan. at 566. This court pointed out that K.S.A. 1978 Supp. 72-5426(a) required a district court to hear impasse petitions within 5 working days and that "[a] speedy resolution of the impasse is the goal of the legislation." 225 Kan. at 567. We then declared:

"This all goes for naught if the basic issues as to what must be negotiated are not determined prior to declaration of impasse. . . . Inasmuch as negotiated agreements are 'package deals,' it is often difficult or impossible to make progress in negotiations while key proposals are involved in litigation as to whether they are mandatorily negotiable.

"In order to effectuate the intent of the Collective Negotiations Law it is imperative to break the present bottleneck in collective negotiations. To accomplish this, wherever possible, potential areas of dispute as to whether an item is mandatorily negotiable must be eliminated. Expeditious judicial determination of any remaining areas of dispute must be accomplished. We therefore establish the following rules of law and procedure:

"1. In actions involving disputes as to whether proposals are mandatorily negotiable, the district court shall determine the matter in the same manner provided by the impasse procedure in K.S.A. 1978 Supp. 72-5426, which provides for a summary hearing commenced within five days, etc.

"2. The district court shall, in its determination, decide such negotiability questions as a matter of law. Ordinarily, evidence admitted should be only the proposals themselves, but the district judge may, in his discretion, permit such other evidence as will assist him in understanding the nature and effect of the proposal. The court will, of course, hear arguments of counsel and consider prior case law." 225 Kan. at 567.

At the time of *Chee-Craw* decision, K.S.A. 1978 Supp. 72-5426 read as follows:

"(a) If in the course of professional negotiation either the board of education or the recognized professional employees' organization, or both, believe that an impasse exists therein, either party individually or both parties together may file a petition in the district court . . . asking the district court to find that an impasse exists in professional negotiation and to order the commencement of the impasse resolution procedures as provided in K.S.A. 1977 Supp. 72-5427 and 72-5428. All such petitions shall be advanced on the docket of the district court and a summary

hearing without jury shall be commenced within the five (5) days immediately following the date of filing, excluding Saturdays, Sundays and legal holidays."

In addition to this section providing for a method of resolving a dispute as to whether an impasse exists, the Negotiations Act as it existed when *Chee-Craw* was decided in 1979 also included a method for determining whether a board or professional employees' organization had engaged in a prohibited practice. K.S.A. 1978 Supp. 72-5430(d) stated:

"Any board of education or professional employees' organization may file a petition in the district court for the county in which the principal offices of the pertinent board of education are located, for injunctive relief and to restrain the commission of a prohibited practice under this section. The procedures for obtaining injunctions and related remedies shall be in accordance with the code of civil procedure, except that the provisions of K.S.A. 60-904 shall not govern actions arising under this section."

It is clear that when *Chee-Craw* was decided, disputes regarding impasses and prohibited practices were to be resolved by filing actions in district court. Thus, it made sense that the same method for resolving a dispute as to whether an impasse existed should be utilized for resolving preliminary issues as to what items were mandatorily negotiable. The rationale for our conclusion was sound, and the resulting procedure we established made sense. However, after the next legislature implemented a new administrative procedure for resolving disputes regarding both the existence of an impasse and prohibited practices, the underpinning for our *Chee-Craw* decision was destroyed.

In 1980, the Kansas Legislature amended K.S.A. 72-5426 and 72-5430 to allow parties to submit to the Secretary, rather than the district court, the question of whether an impasse exists or a controversy surrounding a prohibited practice. L. 1980, ch. 220, §§ 9, 12, 13. The legislative history of these provisions makes it clear this legislation was proposed and passed in specific response to the *Chee-Craw* decision. Minutes of the House Committee on Education, March 25, 1980, p. 2. Provisions relating to the district court were stricken from the existing law, and an administrative procedure involving the Secretary was implemented. The wording of the 1980 enactments appeared as follows:

"Sec. 9. K.S.A. 1979 Supp. 72-5426 is hereby amended to read as follows: 72-5426. (a) If in the course of professional negotiation either the board of education or the recognized professional employees' organization, or both, believe that an impasse exists therein, either party individually or both parties together may file a petition ~~in the district court for the home county of the school district or the county in which the area vocational technical school or community junior college is located~~ *with the secretary,* ~~asking the district court~~ *secretary* ~~to find that~~ *investigate and determine the question of whether* an impasse exists in professional and negotiation and, *if a finding that an impasse exists is made,* to ~~order the commencement of the~~ *begin* impasse resolution procedures as provided in K.S.A. 1979 Supp. 72-5427 and 72-5428, *and amendments thereto.* ~~All such petitions shall be advanced on the docket of the district court and a summary hearing without jury shall be commenced~~ Within the five (5) days immediately following the date of filing, excluding Saturdays, Sundays and legal holidays, *the secretary shall begin investigation of the question raised by the petition and in order to determine the question may meet with the parties or their representatives or both, either jointly or separately, and may hold such conferences, consultations and discussions therewith as the secretary deems necessary. If the secretary decides on the basis of the investigation that a hearing is necessary to determine the question, the secretary shall conduct the hearing immediately.*

(b) If the ~~district court~~ *secretary* finds that no impasse exists in professional negotiation between the parties, the ~~district court~~ *secretary* shall ~~enter findings of fact and a ruling to that effect and shall~~ order the parties to continue professional negotiation ~~and, if warranted by the circumstances, may retain jurisdiction in the matter.~~

(c) If the ~~district court~~ *secretary* finds that an impasse exists in professional negotiation between the parties, the ~~district court~~ *secretary* shall ~~enter findings of fact, shall order that~~ *begin* impasse resolution procedures be commenced in accordance with K.S.A. 1979 Supp. 72-5427 and 72-5428, and amendments thereto~~, and may order other appropriate relief which is not inconsistent with such proceedings. The clerk of the district court shall cause a copy of such findings and orders to be delivered forthwith to the secretary and to the parties.~~

(d) ~~All of the costs incurred in the district court proceedings under this section shall be borne equally by the board of education and the professional employees' organization involved therein.~~

~~(e)~~ Notwithstanding the foregoing provisions of this section, *an impasse is deemed to exist* if ~~both~~ *the board of education and the recognized professional employees' organization* ~~believe that an impasse exists in professional negotiation~~ *have not reached agreement with respect to the terms and conditions of professional service by the statutory declaration of impasse date and, on such date,* the parties ~~may~~ *shall* jointly file a notice *of the existence of impasse* with the secretary ~~stating that the parties are at impasse~~. Upon receipt of such joint notice, the secretary shall ~~commence~~ *begin* impasse resolution procedures in accordance with K.S.A. 1979 Supp. 72-5427 and 72-5428, and amendments thereto."

Subsection (d) of K.S.A. 1979 Supp. 72-5430, which allowed a board or professional employees' organization to file for injunctive relief in district court to restrain the commission of a prohibited practice, was specifically deleted by § 12 of the 1980 amendments. In its place, the legislature enacted § 13 (now K.S.A. 72-5430a), which provided:

"New Sec. 13. (a) Any controversy concerning prohibited practices may be submitted to the secretary. Proceedings against the party alleged to have committed a prohibited practice shall be commenced within six (6) months of the date of the alleged practice by service upon it by the secretary of a written notice, together with a copy of the charges. The accused party shall have twenty 20 days within which to serve a written answer to the charges, unless the secretary determines an emergency exists and requires the accused party to serve a written answer to the charges within twenty-four (24) hours of receipt. A strike or lockout shall be construed to be an emergency. The secretary shall hold a hearing promptly thereafter and at the hearing, the parties shall be permitted to be represented by counsel and to summon witnesses in their behalf. Compliance with the technical rules of evidence shall not be required.

"(b) The secretary shall make findings of fact upon all the testimony and shall either dismiss the complaint or determine that a prohibited practice has been or is being committed, and shall enter a final order granting or denying in whole or in part the relief sought. Any person aggrieved by a final order of the secretary may obtain a review of such order in the district court, in the judicial district where the principal offices of the pertinent board of education are located, by filing in such court a petition praying that the order of the secretary be modified or set aside, with copy of the complaint filed with the secretary, and thereupon the aggrieved party shall file in the court the record in the proceeding certified by the secretary.

"The court shall hear the appeal by trial *de novo* with or without a jury in accordance with the provisions of K.S.A. 60-238, and the court may, in its discretion, permit the aggrieved party or the secretary to submit additional evidence on any issue. The appeal shall be heard and determined by the court expeditiously as possible. After hearing, the court may affirm the order of the secretary. If the order of the secretary is not affirmed, the court may set aside or modify it, in whole or in part, or may remand the proceedings to the secretary for further disposition in accordance with the order of the court.

"The jurisdiction of the district court shall be exclusive and its final order or decree shall be subject to review in the same manner as other appeals from the district court in civil cases.

"(c) The secretary is hereby authorized to file a petition in the district court to enforce his or her final orders.

"(d) If there is an alleged violation of either subsections (b)(8) or (c)(5) of K.S.A. 1979 Supp. 72-5430, as amended, the aggrieved party or the secretary is authorized to seek relief in district court."

It is clear the legislature intended to implement an administrative mechanism through the Secretary for resolving disputes in order to more quickly reach a negotiated agreement. These changes bring into focus the fact that "[w]hen the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment." *State v. Clint L.*, 262 Kan. 174, Syl. ¶ 2, 936 P.2d 235 (1997); see *Hughes v. Inland Container Corp.*, 247 Kan. 407, 414, 799 P.2d 1011 (1990).

Although the 1980 amendments specifically encompassed the declaration of impasse and resolution of prohibited practices disputes, they failed to designate how questions as to whether specific items are mandatorily negotiable were to be determined. A possible reason for not doing so is because S.B. 539 substantially amended K.S.A. 1979 Supp. 72-5413(l) to more specifically enumerate the meaning of "terms and conditions of professional service." L. 1980, ch. 220, § 1(l).

Although the Education Association correctly points out that the legislature is presumed to act with knowledge of relevant judicial decisions, *State v. Trudell*, 243 Kan. 29, 34, 755 P.2d 511 (1988), this argument no more supports the Education Association's position than it does that of the Board. On one hand, the change of these statutes without specifically providing a procedure to resolve disputes regarding whether proposals are mandatorily negotiable could be taken to mean the legislature approved of the procedure adopted in *Chee-Craw*. On the other hand, the legislature could have accepted the reasoning of *Chee-Craw* that the same procedure for determining whether an impasse exists should be applied to determinations of mandatorily negotiable items and did not see the need to enact a special procedure for such a dispute once it made the changes in the wording of 72-5413(l).

A reading of the entire Negotiations Act as it was amended in 1980 does not weigh in favor of a finding that the legislature intended the district court to resolve disputes regarding negotiability. With the exception of one statute allowing a party to file a summary

court action to compel compliance with an arbitration procedure, K.S.A. 72-5424(b), all disputes involving professional negotiations are to be resolved through the Secretary, although certain provisions of the Act include the right to seek review de novo in the district court. See K.S.A. 72-5417; K.S.A. 72-5418; K.S.A. 72-5419; K.S.A. 72-5420; K.S.A. 72-5426; K.S.A. 1997 Supp. 72-5427; K.S.A. 72-5428; and K.S.A. 72-5430a. In addition, K.S.A. 72-5432 provides:

"(a) The secretary of human resources may adopt such rules and regulations as are necessary to implement and administer the provisions of K.S.A. 72-5413 through 72-5431, and amendments to such sections, which place specific duties and responsibilities upon the secretary.

. . . .

"(c) The secretary of human resources has the power to issue subpoenas requiring the attendance of any witnesses and the production of any records, books, papers and documents that the secretary considers necessary to implement and administer the provisions of K.S.A. 72-5413 through 72-5431, and amendments to such sections, which place specific duties and responsibilities upon the secretary. In the event of refusal to obey a subpoena on the part of any person or persons, the secretary shall have the authority to bring an action to enforce the subpoena in a court of competent jurisdiction."

We stated in *U.S.D. No. 279*, 247 Kan. at 533: "In construing the statute, the legislative intention is to be determined from consideration of the entire act." We also there held that the Secretary "performs a quasi-judicial function in investigating, initiating, and conducting hearings on impasse resolution procedures and prohibited practice complaints" and found that the delegation of this authority to the Secretary was constitutional. 247 Kan. at 534-36.

When *Chee-Craw* was decided, the Negotiations Act provided for expeditious judicial determination of disputes. The 1980 amendments altered this procedure by requiring an initial administrative determination of disputes through the Secretary's exercise of quasi-judicial functions. The procedure adopted in *Chee-Craw* to permit a summary hearing in district court when the negotiability of a proposal is in dispute was intended to speed impasse resolution. However, utilizing this same procedure under the present administrative scheme actually has the effect of slowing down the process.

In the present case, mandatory impasse procedures directed by the Secretary were interrupted when this declaratory judgment action was filed. Had this dispute been raised in the first instance for resolution by the Secretary, rather than moving the proceedings to a separate tribunal, less delay would likely have resulted. Furthermore, since enactment of the Negotiations Act, there appears to have been less litigation brought before this court regarding the mandatorily negotiable nature of contract provisions. This indicates that either all issues have been statutorily settled or the Secretary is ideally situated to quickly, summarily, and uniformly rule upon such disputes. The procedure we suggest does not appear to prevent a party disagreeing with the Secretary's ruling from filing a prohibited practices complaint, which can be appealed de novo to the district court without interruption of the initial impasse proceedings.

This procedure draws support from several of our more recent cases, where we have described the procedure for review of controversies under the Negotiations Act. In setting forth the standard of review in *U.S.D. No. 352 v. NEA-Goodland,* 246 Kan. 137, 785 P.2d 993 (1990), we mentioned the applicability of the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.,* while recognizing that the district court did retain the power to review prohibited practices cases de novo.

In *U.S.D. No. 251 v. Secretary of Kansas Dept. of Human Resources,* 233 Kan. 436, 439, 661 P.2d 1248 (1983), we dismissed the case for lack of jurisdiction due to the failure to exhaust administrative remedies. Although involving a prohibited practices complaint, the reasoning of this case is applicable to the present situation. Quoting *Jarvis v. Kansas Commission on Civil Rights,* 215 Kan. 902, 904-906, 528 P.2d 1232 (1974), we said:

" 'The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. A primary purpose of the doctrine is the avoidance of premature interruption of the administrative process. It is normally desirable to let the administrative agency develop the necessary factual background upon which its decisions are based. Since agency decisions are frequently of a discretionary nature, or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. It is more efficient for the administrative process to go forward without interruption

than it is to permit the parties to seek aid from the courts at various intermediate stages. The very same reasons lie behind judicial rules sharply limiting interlocutory appeals. Frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures. [Citations omitted.]

. . . .

" 'In its action in the district court, respondent has attempted to employ the provisions of the declaratory judgment statute. (K.S.A. 60-1701.) Even if an actual controversy existed between the parties, we cannot permit the use of a declaratory judgment in this situation. The courts should not interfere with administrative proceedings and assume jurisdiction of declaratory judgment proceedings until administrative remedies have been exhausted. (22 Am. Jur. 2d, Declaratory Judgments § 31, p. 881.)' " 233 Kan. at 438-39.

*U.S.D. No. 251* involved an appeal to the district court of an order of a labor conciliator who had issued a letter ruling regarding a prohibited practices complaint. We determined this ruling was not a final order and, thus, the district court action was premature. 233 Kan. at 439.

In cases that have been before the appellate courts since the 1980 amendments to the Negotiations Act provided for resolution of disputes by the Secretary, questions involving whether a proposal is mandatorily negotiable have arisen following an appeal de novo in a district court of a prohibited practices complaint. See *U.S.D. No. 352*, 246 Kan. 137; *U.S.D. No. 501 v. Secretary of Kansas Dept. of Human Resources*, 235 Kan. 968, 685 P.2d 874 (1984); *U.S.D. No. 314 v. Kansas Dept. of Human Resources*, 18 Kan. App. 2d 596, 856 P.2d 1343, *rev. denied* 253 Kan. 864 (1993). While this is not binding authority for a decision that the *Chee-Craw* procedure is no longer proper, it is a strong indication that we should resolve all of these matters under a single procedure centered on the Secretary.

The district court in its ruling offered K.S.A. 60-1701, the declaratory judgment statute, as a ground for jurisdiction of this case. This ground was rejected on the basis of the failure to exhaust administrative remedies in *U.S.D. No. 251*, 233 Kan. 438-39. Other cases have similarly rejected 60-1701 as a method of obtaining jurisdiction over a case being litigated in another forum.

In *Pugh v. City of Topeka*, 151 Kan. 327, 99 P.2d 862 (1940), we held that, in the absence of unusual circumstances or emergency features, the declaratory judgment statute should not be used in pending actions to resolve questions of law or procedure, or as a substitute for ordinary actions which afford reasonably adequate remedies. 151 Kan. at 331.

"Particularly is its use not sanctioned in another action where the same issues are actually being determined. The rule is thus stated in 16 Am. Jur. 295:

" 'The courts will ordinarily refuse to entertain an action for declaratory judgment as to questions which are determinable in a pending action or proceeding between the same parties.' " 151 Kan. at 331.

In *Thompson v. Amis*, 208 Kan. 658, Syl. ¶ 5, 493 P.2d 1259, *cert. denied* 409 U.S. 847 (1972), we stated: "Where a district court has appellate jurisdiction to review the decisions of a quasi-judicial body, it has no jurisdiction in an independent equitable action to review alleged errors." This statement was applied in *Ratley v. Sheriff's Civil Service Board*, 7 Kan. App. 2d 638, 641, 646 P.2d 1133 (1982), where the court concluded: "Therefore, any appeal from a decision or ruling by such a board must be taken exclusively under K.S.A. 1981 Supp. 60-2101(d), and not by an independent action, such as one for declaratory relief." In *Kansas Sunset Assocs. v. Kansas Dept. of Health & Environment*, 16 Kan. App. 2d 1, Syl. ¶¶ 1, 2, 818 P.2d 797 (1991), the Court of Appeals held:

"The Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*, is the exclusive means of judicial review of agency actions unless the agency is specifically exempted from application of the Act."

"The KJRA does not deprive a party of the right to judicial declaratory relief. However, in order to obtain this relief, the procedural requirements set forth in the Act must be followed."

Although most of these statements regarding the right to obtain declaratory relief are made in the context of reviewing agency action, they would appear equally applicable when an agency has not been permitted to take action regarding a matter it has been delegated authority to resolve. The legislature's delegation of authority to the Secretary to decide whether an impasse exists and to institute resolution procedures includes the authority to determine preliminary matters such as negotiability, which is necessary for a deter-

mination of whether an impasse exists. Clearly, if the Secretary finds that the only disputed proposal is not mandatorily negotiable, there could be no declaration of impasse.

In *Garden City Educators' Ass'n v. Vance*, 224 Kan. 732, 585 P.2d 1057 (1978), we discussed how a legislative change in the Negotiations Act altered a prior case where we judicially set a cutoff date for the end of negotiations. In holding that the specific statutes relating to impasse resolution procedures took precedence over the prior decision, we noted: "It is not unusual for the judicial construction of a statute to be affected by subsequent amendments to the statute. Such amendments may justify a judicial construction contrary to the court's previous interpretation." 224 Kan. at 736.

We hold the court-crafted procedure set forth in *Chee-Craw* is no longer appropriate in light of the statutory changes in the Negotiations Act. The determination regarding negotiability must be made by the Secretary, rather than permitting a declaratory judgment action to be filed in the district court.

We hold the Education Association failed to exhaust its administrative remedies. This compels a ruling that the district court did not have jurisdiction over this matter.

Appeal dismissed.